*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re BOOMANOTTI, Minors.

UNPUBLISHED
March 23, 2023

No. 362953
Houghton Circuit Court
Family Division
LC No. 2021-000002-NA

Before: K. F. KELLY, P.J., and BOONSTRA and REDFORD, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to her two minor children, WB and RB. Finding no errors warranting reversal, we affirm.

## I. FACTUAL BACKGROUND

In March 2021, petitioner Department of Health and Human Services (the "Department") filed a petition alleging that respondent refused to participate in drug screens, was unable to provide safe housing for WB and RB, and was involved in an abusive familial relationship. The Department also alleged that while respondent and her children were living in North Dakota, hair-follicle tests were performed on WB and RB, and both children tested positive for methamphetamine. The petition asked the court to take jurisdiction over the children. Following a preliminary hearing, the trial court authorized the petition, granted in-home placement, and ordered respondent to submit to drug testing.

In May 2022, petitioner filed a subsequent petition requesting the termination of respondent's parental rights to WB and RB under MCL 712A.19b(3)(c)(*i*) (no reasonable likelihood that conditions leading to adjudication will be rectified). The petition alleged that respondent tested positive for methamphetamine, opioids, and other illicit substances on numerous occasions, experienced periods of homelessness and lived in inappropriate housing, and did not provide proof of maintaining employment. The petition also alleged that respondent continued to be involved in violent domestic relationships, failed to avail herself of mental health services, and exercised minimal parenting time because of missed or positive drug screenings.

Following an evidentiary hearing on July 21, 2022, the trial court determined that petitioner presented clear and convincing evidence to support termination of respondent's parental rights

under MCL 712A.19b(3)(c)(*i*). The trial court also determined that petitioner established, by a preponderance of the evidence, that termination of respondent's parental rights was in WB's and RB's best interests. This appeal followed.

## II. STATUTORY GROUNDS

Respondent first argues that the trial court clearly erred when it determined that there was clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*). We disagree.

## A. STANDARD OF REVIEW

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296–297; 690 NW2d 505 (2004).

## B. ANALYSIS

Grounds for termination exist under MCL 712A.19b(3)(c)(*i*) if at least 182 days have passed between the initial dispositional order and the order terminating respondent's parental rights and "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." *In re White*, 303 Mich App at 710, citing MCL 712A.19b(3)(c)(*i*). A parent's failure to resolve issues concerning substance use, or a parent's continued inability to provide adequate housing and financial support for a minor child, constitutes clear and convincing evidence that termination is appropriate under the cited statutory grounds. *In re Frey*, 297 Mich App 242, 244-245; 824 NW2d 569 (2012). A parent's repeated positive or missed drug screenings, and lack of engagement with substance use counseling services may demonstrate that termination of parental rights is warranted under MCL 712A.19b(3)(c)(*i*). See *In re Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 358502), slip op at 6. " 'If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made.' " *In re VanDalen*, 293 Mich App at 139, quoting MCL 712A.19b(5).

It is undisputed that more than 182 days have elapsed between the initial dispositional order issued on September 21, 2021, and the order terminating respondent's parental rights on August 3, 2022. Respondent's substance use, homelessness, domestic violence, lack of employment, and mental health concerns led to the initial adjudication. The Department presented detailed testimony during the evidentiary hearings concerning respondent's continued substance use, drug screening inconsistencies, and repeated refusal to participate in treatment services for alcohol and methamphetamine abuse. Alexandria Mayo, a services specialist, testified that between March

2022 and July 2022, respondent tested positive for methamphetamine six times, refused two drug screenings, and tested negative eight times. Moreover, there was only one face-to-face visit between respondent and her children between October 2021 and March 2022, because of respondent's repeated drug screen refusals or positive screens through the Friend of the Court. While respondent stated that she has never actively refused any drug screenings and was only unable to attend some because of work conflicts or a lack of transportation, the Department repeatedly offered taxi vouchers, transportation services, and mobile testing options.

Respondent was also obligated to participate in outpatient services, and while she did complete the requested substance use assessment, she refused to complete the recommended inpatient treatment at two different residential substance use treatment facilities. Respondent also failed to attend eight outpatient appointments. Respondent's refusal to acknowledge the severity of her substance use was apparent at the June 6, 2022 hearing, during which she was legally intoxicated and broadly proclaimed that she did not abuse methamphetamine throughout the case service plan despite multiple positive screenings. During the termination hearing, respondent stated she now realized the severity of her substance use and attended a handful of Alcoholics Anonymous and Narcotics Anonymous meetings, counseling on and off for weeks at a time, and church twice a week to address the issue. Dr. Kirk Klemme, a board-certified physician and addiction medicine specialist, testified that respondent appeared highly motivated to make the necessary changes for recovery and was becoming more consistent with her attendance at treatment and required drug screenings. However, respondent tested positive for methamphetamine three times in the span of a month before the hearing and admitted during an office visit that she had used methamphetamine three days earlier. Thus, while Dr. Klemme's testimony demonstrates that respondent made some progress, the condition that led to removal continue to exist, and the trial court did not clearly err when it concluded there was no reasonable likelihood that it will be rectified within a reasonable time, particularly given that respondent has struggled with substance use for almost a decade.

Respondent's history of homelessness, housing instability, and irregular employment—and her inability to rectify these problems—also supported the trial court's order terminating respondent's parental rights. Respondent was homeless during October 2020, and spent six months attempting to contact the Michigan State Housing Development Authority for housing services before a caseworker assisted her with obtaining an apartment. Respondent was also facing eviction at the time of the termination hearing and asserted that she had not been able to "keep up" with multiple jobs because of parenting time with RB and WB and the required drug screenings. While respondent contends that the Department did not present any testimony establishing that respondent continued to have trash or improper bedding in her apartment, the trial court's focus was more broadly concerned about respondent's inability to provide safe and stable housing for WB and RB.

Respondent also asserts that while she was in the process of being evicted, she planned on relocating her personal property to her father's home, entering inpatient treatment, and seeking alternative housing. However, there is no evidence that this plan will ever come to fruition or that respondent will be able to obtain stable housing in a reasonable period of time. Respondent contends that her challenges with consistent employment should not have served as a basis for adjudication and, therefore, should not be grounds for terminating respondent's parental rights. But we have consistently held that a parent's inability to provide financial support for a minor

child may constitute clear and convincing evidence that termination is appropriate. *In re Frey*, 297 Mich App at 244.

Lastly, respondent argues that while she was previously involved in relationships featuring domestic violence because of her father, there was no indication that this issue continued to exist at the time of the termination hearing. However, respondent did not demonstrate that she engaged in any services to address domestic violence in her familial or personal relationships and was also arrested for malicious destruction of personal property for allegedly smashing her boyfriend's car windshield. Respondent's mental health also appeared to be an ongoing concern. Mayo testified about an incident in April 2021 during which respondent asked Mayo for a ride to the emergency room to address severe discharge and bleeding from her eyes and nose, but it was unclear to Mayo whether respondent required medical attention or if respondent was experiencing methamphetamine-induced psychosis or hallucinations. Mayo also testified that in July 2022, respondent allegedly threatened to kill one of the paternal grandmother's daughters.

Ultimately, respondent's minimal and sporadic efforts to comply with the case service plan, the length and severity of respondent's substance use issues, and respondent's inability to properly care for WB and RB after more than a year of services demonstrates that the trial court did not clearly err when terminating respondent's parental rights under MCL 712A.19b(3)(c)(*i*).

## III. BEST INTERESTS

Next, respondent argues that the trial court clearly erred when it determined that termination of respondent's parental rights was in WB's and RB's best interests under MCR 3.977(H)(3)(b). We disagree.

## A. STANDARD OF REVIEW

This Court reviews a trial court's determination of best interests for clear error. *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App at 296–297.

## B. ANALYSIS

"Even if the trial court finds that the Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). Under MCR 3.977(H)(3)(b), "[t]he court must order termination of the parental rights of a respondent and must order that additional efforts for reunification of the child with the respondent must not be made, if the court finds . . . that termination of parental rights is in the child's best interests." In making its determination, the trial court "should weigh all the evidence available to it," and may consider

> the child's bond to the parent, the parent's parenting ability, the child's need for
> permanency, stability, and finality, and the advantages of a foster home over the

-4-

parent's home. Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan. [*In re Atchley*, ___ Mich App at ___; slip op at 7 (quotation marks and citation omitted).]

Moreover, "[a] child's placement with relatives is a factor that the trial court is required to consider." *In re Gonzales/Martinez*, 310 Mich App at 434. While placement with a relative weighs against termination, it is not dispositive because a trial court "may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests." *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012). In the majority of cases, it is in the child's best interests to be placed with his or her siblings. *Id*. at 41-42.

The trial court did not clearly err when it determined that termination of respondent's parental rights was in WB's and RB's best interests. Respondent contends that the testimony presented at the termination hearing establishes the deep bond between respondent and her children, and that there were minimal concerns about respondent's parenting skills. While it is true Mayo testified that respondent's parenting skills appeared generally appropriate, WB and RB were happy to see their mother during visitation, and there was an apparent bond between respondent and the children, there were also concerns about respondent speaking poorly about WB's and RB's placements and making false promises to the children concerning reunification. WB and RB would also "act out" and become extremely sensitive following parenting time with respondent. Moreover, the length and severity of respondent's methamphetamine use has impacted WB and RB since birth, with both children requiring neonatal intensive care for substance abuse, and subsequently testing positive for methamphetamine after a hair-follicle test was conducted on January 16, 2020, in North Dakota.

Respondent also argues that WB's and RB's placement with their paternal grandmothers jolted respondent's efforts at reunification because RB's paternal grandmother and WB's paternal grandmother did not communicate with her about the children's medical appointments, school activities, or their overall wellbeing. However, respondent's minimal contact with WB and RB was a result of her continued substance use since her failure to address the issues outlined in the case service plan limited her to only eight visits with her children since June 2021. While respondent refers to Dr. Klemme's testimony to demonstrate that she has significantly improved over the past six months and is in a better position to care for WB and RB, the entire record points to the contrary. Since this case commenced in March 2021, concerns about respondent's housing, employment, mental health, domestic violence, and most critically, substance use have only increased.

As the trial court noted, the termination of a respondent's parental rights is not required if the child is placed with relatives, and this factor weighs against termination. However, this Court has repeatedly held that a trial court's finding that termination was in the best interest of a child is not clearly erroneous if the parent-respondent has not successfully addressed their substance use and mental health issues, and is not motivated to make the necessary changes to address those issues. See *In re Gonzales/Martinez*, 310 Mich App at 435 (the respondent-mother's failure to resolve her substance abuse, and attend counseling and treatment sessions, justified the termination of her parental rights despite the child's relative placement); see also *In re Atchley*, ___ Mich App at ___; slip op at 7 (stating that, although the child was placed with a relative, the respondent-

mother's lack of progress toward reunification, including her ongoing and unrectified substance use issues, established that termination was in the child's best interests). Respondent has had ample time to comply with the case service plan, and rectify her substance use through the numerous inpatient and outpatient programs offered through the Department and other local entities. Unfortunately, respondent has continually rejected seeking treatment and has not made significant enough strides in her recovery to provide proper care and custody for WB and RB. The trial court did not clearly err when it found that termination of respondent's parental rights was in WB's and RB's best interests.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Mark T. Boonstra
/s/ James Robert Redford